IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KERRI HUGHES                                                                         PLAINTIFF

v.                                    CIVIL NO. 16-5065

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]                               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kerri Hughes, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her application for DIB on March 22, 2013. (ECF No. 10, pp. 52, 198). In her application, Plaintiff alleges disability due to mood swings, asthma, spasms in her eyes, high blood pressure, anxiety, depression, and addictive personality. (ECF No. 10, p. 201). Plaintiff alleges an amended onset date of January 13, 2014. (ECF No. 10, pp. 52, 69).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

This application was denied initially and again upon reconsideration. (ECF No. 10, pp. 96-113).

Thereafter, Plaintiff requested an administrative hearing on her denied application, and this hearing request was granted. (ECF No. 10, pp. 124-26). Plaintiff's administrative hearing was held on June 26, 2014, in Fort Smith, Arkansas (ECF No. 10, pp. 66-94). Plaintiff appeared by video teleconference and was represented by Jack Rowlins. Id. Plaintiff and Vocational Expert ("VE") Jim Spragens testified at this hearing. Id. At the time of this hearing, Plaintiff was thirty-nine (39) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c). (ECF No. 10, p. 71). As for her level of education, Plaintiff earned a high school diploma. Id. at 71.

After this hearing, on October 24, 2014, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (ECF No. 10, pp. 49-61). In this decision, the ALJ found Plaintiff continued to meet the insured status requirements of the Act through the date of the ALJ's decision. (ECF No. 10, p. 54, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 13, 2014, her amended alleged onset date (ECF No. 10, p. 54, Finding 2). The ALJ determined Plaintiff had the following severe impairments: hypertension, blepharospasm, and major depression with psychotic features. (ECF No. 10, p. 55, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 10, pp. 55-56, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 10, pp. 56-61, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found

her claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple tasks and simple instructions. She is limited to incidental contact with the public.

Id.

The ALJ then determined Plaintiff was able to perform her Past Relevant Work ("PRW") as a meat wrapper as actually and generally performed. (ECF No. 10, p. 61, Finding 6). The ALJ subsequently determined Plaintiff had not been under a disability, as defined by the Act, from January 13, 2014, through October 24, 2014, the date of the ALJ's decision. (ECF No. 10, p. 61, Finding 7).

Thereafter, on December 12, 2014, Plaintiff requested a review by the Appeals Council (ECF. No. 10, p. 43). The Appeals Council denied this request on February 18, 2016. (ECF No. 10, pp. 5-11). On March 15, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on March 23, 2016. (ECF No. 6). This case is now ready for decision.

**II. Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may

not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683

F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III.    Discussion:

Plaintiff raises three issues on appeal: 1) the Appeals Council failed to consider new material evidence submitted subsequent to Plaintiff's hearing; 2) the ALJ failed to properly assess the mental component of Plaintiff's RFC; and 3) the ALJ's RFC assessment is not supported by substantial evidence. (ECF No. 12).

####    A.    Additional Medical Records:

Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); Woolf v. Shalala, 3 F.3d 1210 (8th Cir. 1993); Chandler v. Secretary of Health and Human Servs., 722 F.2d 369, 371 (8th Cir. 1983). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." Woolf, 3 F.3d at 1215. Thus, to qualify as "material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. See Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir.1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application).

Plaintiff does not dispute the Appels Council properly declined to consider some of the additional evidence: treatment records from Perspectives Behavioral Health, dated November 17, 2014, through January 9, 2015, and; treatment records from Fayetteville Diagnostic Clinic,

dated January 5, 2015, through January 13, 2015. (ECF No. 11, pp. 2-3). Plaintiff instead contends the Appeals Council failed to consider treatment records from Ozark Guidance Center, dated from July 30, 2014, through October 8, 2014. (ECF No. 11, pp. 1-4). The Appeals Council, however, did consider the records from Ozark Guidance Center.

The Appeals Council, by order, made all additional evidence submitted by Plaintiff part of the record. (ECF No. 10, p. 10). The Appeals Council specifically determined the records from Perspectives Behavioral Health and Fayetteville Diagnostic Clinic contained new information about a later time. (ECF No. 10, p. 6). Plaintiff, in her brief, accepted the Appeals Council's determination without protest. (ECF No. 11, pp. 2-3). On the remainder of the evidence, however, the Appeals Council stated the following:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(ECF No. 10, p. 6). Based on a plain reading of the Appeals Council's decision, the Appeals Council considered the additional evidence submitted by Plaintiff material and gave it proper consideration. Now that this matter has come before this Court, "our task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ." *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995).

### B. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily

6

activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. While the record reveals that Plaintiff has a history of physical and mental health treatment, the evidence of record shows that Plaintiff responded well to treatment. See Patrick v. Barnhart, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).The record further reveals that during the relevant time period Plaintiff worked, although the work activity did not constitute substantial gainful activity. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003) (holding that even part-time work is inconsistent with claim of disability). The ALJ determined that while Plaintiff was independent in her daily activities and personal care, her depression symptoms cause Plaintiff to experience a variable mood, but which only mildly interferes with her daily activities. (ECF No. 10, p. 60). The ALJ also noted that although Plaintiff had moderate difficulties with social functioning, concentration, persistence, and pace, she was able to maintain healthy personal relationships, and responded well to treatment. Id.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that the ALJ provided good reasons for discounting Plaintiff's subjective complaints and that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible.

**C.     ALJ's RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

First, Plaintiff argues the ALJ failed to consider "Plaintiff's ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine setting." (ECF No. 11, pp. 5-6). Plaintiff, however, never endorsed limitation in the areas she now wants this Court to consider. Plaintiff's hearing testimony and application

materials are void of any complaint of limitation in these areas. To the extent Plaintiff testified she had difficulty around other people in public, the ALJ found she had a mild restriction and limited her RFC to include only incidental contact with the public. (ECF No. 10, pp. 56-61).

Second, Plaintiff contends the ALJ failed to consider Plaintiff's obesity in combination with her mental impairments. (ECF No. 11, p. 6). Although there is some evidence in the record to show that plaintiff was obese, we can find no evidence to indicate that plaintiff's obesity prevented her from performing work-related activities. None of her treating doctors suggested her weight imposed any additional work-related limitations, and she did not testify that her weight imposed additional restrictions. See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003). Plaintiff correctly identified that obesity can exacerbate the impact of other impairments, but offered no evidence to support the argument that she, during the relevant time period, did in fact suffer additional compounding symptoms due to her obesity, nor can any be found on the record. Accordingly, we do not find the ALJ's failure to discuss plaintiff's obesity to be fatal. See Forte v. Barnhart, 377 F.3d 892, 896-897 (8th Cir. 2004).

Third, Plaintiff argues the ALJ did not consider the effect of Plaintiff's blepharospasm in making his RFC determination. (ECF No. 11, p. 6). Contrary to Plaintiff's assertion, the ALJ summarized all of Plaintiff's medical records concerning her blepharospasm and noted that her condition was well managed with regular Botox injection treatments. (ECF No. 10, p. 58). The ALJ further identified the specific variance in his RFC determination to account for Plaintiff's blepharospasm:

> [T]he [Plaintiff's] well-controlled blepharospasm does not impose exertional or visual difficulties. Rather, this impairment merely supports an assessment to performing simple tasks in case intermittent symptoms interfere with her ability to focus and concentrate.

9

(ECF No. 10, p. 58). Although Plaintiff contends her Botox treatments wear off over time and she must continue to get new injections, the same is true for any chronic condition which requires long term treatment with medication or additional procedures. As previously noted, however, an impairment that can be controlled by treatment or medication cannot be considered disabling. Patrick v. Barnhart, 323 F.3d 592, 596 (8th Cir. 2004).

Fourth, Plaintiff contends the ALJ should have assigned weight to Plaintiff's Global Assessment of Functioning ("GAF") Score of 25, which was assigned at the beginning of her inpatient hospital treatment on February 12, 1014. (ECF No. 11, p. 6). The GAF score of 25 was assigned by an advanced practice registered nurse, a source who is not an acceptable medical source for purposes of 20 C.F.R. §404.1513. (ECF No. 10, pp. 476-80). The ALJ is permitted to consider the score for the purpose of determining the severity of Plaintiff's already medically determinable impairment, but such a score serves only as a snapshot in time of Plaintiff's functioning. See Kluesner v. Astrue, 607 F.3d 533, 535 (8th Cir. 2010). The ALJ further noted that Plaintiff was "consistently assessed with a [GAF] score of 52, consistent with an assessment of moderate symptoms or functional difficulties," and that "[m]edical records also describe significant improvement in mood and cognitive symptoms such that she has been doing well overall." (ECF No. 10, p. 59). Therefore, the Court finds the ALJ did consider Plaintiff's GAF scores in combination with her treatment history in reaching his RFC determination.

Finally, Plaintiff asserts the ALJ's RFC determination relied too heavily on evidence Plaintiff's impairments were effectively managed with treatment and medication, and that some of her symptoms have been attributed to illicit drug abuse. (ECF No. 11, p. 7-9). Management of symptoms with treatment and medication, as well as illicit drug abuse, are

both proper factors the ALJ may consider in his decision. Patrick v. Barnhart, 323 F.3d 592 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling); See e.g., Pettit v. Apfel, 218 F.3d 901 (8th Cir. 2000). The ALJ did not determine Plaintiff's illicit drug abuse was material to his findings. The ALJ stated the following:

> [T]his brief episode of acute psychotic symptoms, in the context of improper drug use, does not direct a finding of disability or an assessment of substantial mental functional limitations. Rather, it merely indicates that [Plaintiff] has underlying depression that requires treatment.

(ECF No. 10, p. 59). Nevertheless, the ALJ identified psychotic features as being a component of Plaintiff's impairments when he determined Plaintiff's major depression was a severe impairment. (ECF No. 10, p. 55). Plaintiff has offered evidence that, in the general population Plaintiff's medications could result in a false-positive test result for methamphetamine abuse, but has offered no evidence that in her particular case her specific test results were, in fact, erroneous, aside from her own subjective testimony. Plaintiff cites records from February 28, 2014, and other records which the ALJ did not have before him which demonstrate Plaintiff's alleged visual and auditory hallucinations continued after her substance abuse was in remission. (ECF No. 11, pp. 7-9). The record also contains evidence Plaintiff has suffered alleged visual and auditory hallucinations her entire life, including during childhood. (ECF No. 10, pp. 82-83). The ALJ noted that "[a]lthough she endorsed daily auditory hallucinations, she noted that they were 'very nondescript.' There were no findings indicating loss of reality testing, impairment in judgment, or response to internal stimuli." (ECF No. 10, p. 59). After thoroughly summarizing the medical evidence in the record and discussing Plaintiff's testimony, the ALJ determined the following:

> [Plaintiff's] essentially intact baseline cognitive functioning does not support a finding of substantial functional limitations. Rather, it merely supports some limitations with respect to task complexity and public contact to minimize the risk of triggered stress aggravating [Plaintiff's] underlying depressive symptoms.

(ECF No. 10, p. 59). The ALJ specifically considered Plaintiff's impairments in combination where the ALJ determined Plaintiff's combination of impairments did not meet or medically equal the severity of one of the impairments in the Listings and when the ALJ made his RFC determination, "[having] considered all symptoms." (ECF No. 10, p. 56); See Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ properly considered combined effects of a claimant's impairments where ALJ determined the claimant did not have an impairment or combination of impairments that rendered him disabled as defined by the Act); See also Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1993) (ALJ properly considered combined effects of a claimant's impairments where ALJ separately discussed claimant's physical impairments, mental impairments, complaints of pain, and daily activities). The Court notes that in formulating Plaintiff's RFC, the ALJ fully summarized all of Plaintiff's medical records and separately discussed each of her alleged impairments. Based on the ALJ's synopsis of Plaintiff's medical records and discussion of each of her alleged impairments, I conclude that the ALJ properly considered the combined effects of Plaintiff's impairments, even those which the ALJ determined were non-severe. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011).

The Court further notes that in determining Plaintiff's RFC, the ALJ considered the medical opinions of many treating physicians, and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")

(citations omitted); <u>Prosch v. Apfel</u>, 201 F.3d 1010 at 1012 (8th Cir. 2000) (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that the Plaintiff's Complaint should be, and is hereby dismissed with prejudice.

IT IS SO ORDERED this 19th day of May, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE